IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 9, 2004 Session

## IN RE: T.H. AND J.H.

**Appeal from the Circuit Court for Cannon County**
**No. 220     Royce Taylor, Judge**

_____

**No. M2003-02265-COA-R3-PT - Filed August 18, 2004**

_____

Mother appeals the termination of her parental rights to her two children. The circuit court found that Mother was in substantial noncompliance with the permanency plan, that she failed to remedy the persistent conditions that prevented her child's return, and that termination was in the child's best interest. We affirm. The record contains numerous extraneous documents that do not pertain to the petition to terminate parental rights or the issues raised on appeal. The parties and the clerk have a responsibility to abridge the record. Tenn. R. App. P. 8A(c). Failure to abridge the record may result in a reduction of the circuit court clerk's fee for the cost of preparing and transmitting the record. Tenn. R. App. P. 40(g).

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., J.J., and WILLIAM B. CAIN, J., joined.

Angello L. Huong, Murfreesboro, Tennessee, for the appellant, S. H., the mother.

Paul G. Summers, Attorney General and Reporter; and Juan G. Villaseñor, Assistant Attorney General, for the appellee, State of Tennessee, Department of Children's Services.

**MEMORANDUM OPINION**[1]

Mother of two children appeals termination of her parental rights. The circuit court found that Mother was in substantial noncompliance with the permanency plan, that she failed to remedy

---

[1]Tenn. Ct. App. R. 10 states:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

the persistent conditions in her life that prevented her child's return, and that termination of Mother's parental rights was in the children's best interest. Mother contends that the Department of Children's Services failed to prove its case by clear and convincing evidence and that her responsibilities under the plans were not reasonably related to remedying the conditions which led to the removal of the children.

The children were removed when Mother was incarcerated on October 23, 2000, for violating probation[2] because no other relative or friend could or would care for the child. The initial permanency plans required Mother to submit to a drug and alcohol assessment and follow its recommendations, submit to random drug screens, complete a parenting assessment and parenting classes, provide stable and secure housing, obtain employment, and ensure that her children were in a drug-free environment.

The Department made reasonable efforts by providing numerous and relevant services. In particular, it not only arranged, it funded the psychological evaluation and in-patient treatment Mother obviously needed. Though Mother went into treatment she only stayed five days. She left treatment against the advice of the treatment professionals and the Department. Thereafter, the Department funded intensive out-patient treatment for Mother but she refused to attend even though funding for transportation was provided.

Mother not only refused treatment, she refused other services offered by the Department. She even failed to do something as simple as apply for food stamps, as recommended by the Department. She was obviously busy, however, for she engaged in numerous criminal activities for which she was arrested and convicted four times during these proceedings. Following her arrest in August 2000, which led to the Department taking custody of her children in October 2000 and precipitated these proceedings, she was arrested on October 18, 2001, and convicted for driving under the influence and child endangerment,[3] she was arrested and then convicted on September 10, 2002, for making harassing phone calls, and thereafter she was arrested and convicted for theft. The theft conviction was the basis for the criminal court revoking her probation for engaging in conspiracy to sell cocaine and for which the court imposed the balance of her 4-1/2 year sentence, which she was serving when the termination hearing occurred. During the pendency of these proceedings, Mother was arrested and convicted four times and served a substantial amount of time in jail, during which time she was unable to care for her children.

The evidence is clear and convincing that Mother refused services -- reasonable efforts of the Department -- and engaged in frequent criminal activity, Mother complains on appeal that the Department failed to make reasonable efforts to assist her and that the plans were not reasonable. This is particularly evident as it pertains to the Department's efforts to provide drug treatment, which

---

[2]The underlying conviction was a felony for conspiracy to sell cocaine.

[3]The offense of child endangerment is of particular concern for the seriousness of the offense is the threat of harm to the child who is riding in a vehicle with a driver who is under the influence of an intoxicant or drug.

she desperately needed. As for housing, and Mother's complaint that the Department failed to adequately assist with housing, we find her complaint disingenuous for she spent much of the relevant time in jail. Though the Department did not argue this point, it could have facetiously noted that while it -- the Department -- did not provide housing, the State of Tennessee did.

Mother also complains that the permanency plan was not reasonable for it required that she obtain employment though she was disabled and received social security disability benefits. We agree with Mother as to the issue of employment; however, we find that the other requirements of the plan were reasonably related to remedying the conditions which led to the removal of the children. Moreover, the evidence is clear and convincing that Mother did not comply with the other requirements of the plan that were reasonably calculated to remedy the conditions, including but without limitation drug treatment.

The circuit court terminated Mother's parental rights on the grounds she was in substantial noncompliance with the permanency plan and that she failed to remedy the persistent conditions that prevented her child's return. There is clear and convincing evidence to support the circuit court's findings of substantial noncompliance with the permanency plan and that Mother failed to remedy the persistent conditions in her life that prevented her children's return. Specifically, but without going into detail, there was clear and convincing evidence that Mother refused to acknowledge her drug addiction and refused treatment even though the Department provided free in-patient and intensive out-patient treatment.

The circuit court also found that it was in the best interest of the child to terminate Mother's parental rights. There is clear and convincing evidence to support this finding. This is supported by the fact that Mother was frequently incarcerated and no other family member would or could provide for the children. It is also supported by the evidence that substantiates the two grounds for termination.

We further find the evidence so compelling that a Memorandum Opinion pursuant to Tenn. R. App. P. 10 is sufficient for this court to affirm the termination of Mother's parental rights.

This record, like too many others, contains numerous documents that should not be in the record.[4] *See In re M.J.B.*, ___ S.W.3d. ___, ___, 2004 WL 769252, at *5-6 (Tenn. Ct. App. 2004).

---

[4]"Like many other appeals from decisions to terminate parental rights under Tenn. Code Ann. § 36-1-113, the record in this case contains many extraneous documents that are not properly includable on appeal." *In re M.J.B.*, 2004 WL 769252, at *5-6. This is apparently "due to the notions, particularly entertained by juvenile court clerks, that a termination case is simply a continuation of a dependent-neglect case." *Id*. at *5. The confusion may be due to the mistaken belief that appealing a termination is the same as a *de novo* appeal to the circuit court in a dependent-neglect case. It is not. A "termination of parental rights proceeding is not simply a continuation of a dependent-neglect proceeding. It is a new and separate proceeding involving different goals and remedies, different evidentiary standards, and different avenues for appeal." *Id.* at *5.

Unlike a dependent-neglect proceeding,[5] wherein the court is to consider the entire record *de novo* on appeal, this court may only consider evidence that has been formally admitted. Tenn. R. Juv. P. 28(c).

Tenn. R. App. P. 24 limits the content of the record on appeal in general. The record for appeals in termination of parental rights cases is further limited by Tenn. R. App. P. 8A(c), which provides:

> In addition to the papers excluded from the record pursuant to Rule 24(a), any portion of a juvenile court file of a child dependency, delinquency or status case that has not been properly admitted into evidence at the termination of parental rights trial shall be excluded from the record.

The limitations on the content of the record in termination cases places additional duties on counsel and the clerk to abridge the record. These limitations are more than an attempt to save paper. This court must limit its review to those documents filed after the filing of the petition for termination, unless subsequently entered into the record - made an exhibit at trial, entered into evidence by stipulation of the parties or by order of the court. It is not proper to include extraneous documents in the record on appeal or for this court to consider them. *See In re M.J.B.*, 2004 WL 769252, at *6. Inclusion of extraneous documents is also an unnecessary expense to the parties. Moreover, it adversely impacts this court's ability and duty to expedite appeals of termination cases as required by Tenn. Code Ann. 36-1-124.[6]

We have addressed this problem in prior opinions. Unfortunately, our efforts have been largely unsuccessful. Tenn. R. App. P. 8A(c) sets forth the requirements for the contents and preparation of the record for termination cases. Tenn. R. App. P. 40(g) provides that the clerk of the trial court shall forfeit the clerk's entire cost of preparing and transmitting the record, or such portion thereof as appropriate, for failure to complete the record on appeal in the manner prescribed. Believing it imperative that we stem the tide of including "the entire file" in order to facilitate the legislative mandate to expedite appeals of termination proceedings and to save the State of Tennessee and other litigants unnecessary costs, we may impose the consequence provided in Tenn.

---

[5]Dependent-neglect proceedings, as distinguished from termination proceedings, are intended to be procedurally informal and juvenile courts may receive and rely on all evidence helpful in determining the questions presented, including oral and written reports, even though not otherwise competent in the hearing on the petition. Tenn. Code Ann. § 37-1-129(d). The rules of evidence in a termination proceeding are much stricter. The Tennessee Rules of Evidence and the evidentiary rules in the Tennessee Rules of Juvenile Procedure apply in termination proceedings. Tenn. Code Ann. § 36-1-113(j).

[6]"[T]he appellate court shall . . . expedite the contested termination of parental rights . . . , and such case shall be given priority over all other civil litigation. . . ." Tenn. Code Ann. § 36-1-124(b). "It is the intent of the general assembly that the permanency of the placement of a child who is the subject of a termination of parental rights proceeding . . . not be delayed any longer than is absolutely necessary consistent with the rights of all parties, but that the rights of the child to permanency at the earliest possible date be given priority over all other civil litigation. . . ." Tenn. Code Ann. § 36-1-124(c).

R. App. P. 40(g) for failing to prepare the record in the manner prescribed.[7] We do not, however, believe it is appropriate in this case because the record was filed before Tenn. R. App. P. 8A went into effect and before *M.J.B.* was decided.

This matter is affirmed and remanded to the juvenile court for further proceedings consistent with this opinion. Costs are assessed against Mother.

_____
FRANK G. CLEMENT, JR., JUDGE

---

[7]We fully recognize that counsel have an affirmative responsibility to abridge the record as well and we have imposed sanctions on counsel when appropriate. Unfortunately, the problems we are now repeatedly experiencing are obviously the result of the "throw in the kitchen sink" philosophy. We can only speculate that this erroneous practice finds its origin in a failure to recognize the very different requirements for compiling the record for appeals of dependent and neglect proceedings as distinguished from appeals from termination of parental rights proceedings.